[No. 752-3.    Division Three.    February 15, 1973.]

*In the Matter of the Welfare of* DANA BAUM *et al., Minors.*
SUSAN BAUM, *Petitioner,* v. THE SUPERIOR COURT FOR
LINCOLN COUNTY, *Respondent.*

*Roland C. Wightman* (of *Cullen, Campbell & Wightman*), for petitioner (appointed counsel for appeal).

*Philip W. Borst, Prosecuting Attorney,* for respondent.

GREEN, C.J.—Petitioner, Susan Baum, by writ of certiorari seeks reversal of an order permanently depriving her of all parental care, custody and control of four minor children.

On December 22, 1970, following a hearing, the court declared these children to be dependent minors and entered an order making them temporary wards of the court with temporary custody in the division of public assistance of the state of Washington in Lincoln County, for placement in foster homes. On July 17, 1972, a show cause hearing was held to determine whether or not petitioner should be permanently deprived of all parental care, custody and control of the four children. Following the hearing the court took the matter under advisement and directed that the two older children be granted a month's visitation at their mother's home; that the next youngest be granted a 2-week visitation; and the smallest youngster, the baby, be ex-

cluded from this visitation. Petitioner was informed that the visitations would be under surveillance of a case-worker.

On August 22, 1972, the court wrote a letter to the prosecuting attorney and counsel for petitioner, as follows:

Norm Brock
Davenport, Washington
Phil Borst
Wilbur, Washington

Re: Susan Baum Children

Gentlemen:

At the close of the evidence in this case I felt that I had heard testimony to the most shameful neglect of children that I have heard in sometime. Nevertheless, Mrs. Baums contention that she had undergone mental health consultations, had grown up, had matured and recognized the error of her ways as vigorously and emotionally argued by Mr. Brock, convinced me that it would be improper to summarily reject her contention. It is for this reason that I took the case under advisement and ordered a visitation as to the older children.

I was also influenced by the testimony that the foster homes were temporary, could ripen into an adoptive situation, but perhaps would not.

Mrs. Baum was advised that the visitation would be under surveillance. I now have the reports from the social investigaters [sic] who looked in on her. The reports are considerably less than one would expect considering that Mrs. Baum knew she was being given a probationary trial. They report a messy, unkept, odiferous home. Although the children were not in harm's way, and, in fact, enjoyed their stay at the lake, I do not feel that their best interests would be served by returning them permanently to the custody of their mother. Consequently, I am ordering that the Court's wardship over these children be changed from temporary to permanent and that the children return to their respective foster homes.

I am filing the original of this letter and you may consider it a memorandum opinion.

Yours truly,
Richard J. Ennis, Judge

Thereafter, on November 6, 1972 the trial court en-

tered the following finding of fact to which error has been assigned:

## XVIII

That Susan Baum has expressed her love for her children and her desire to have back the children and a belief in her ability to now properly care for and raise said children. That pending final judgment, Susan Baum was advised that temporary visitation with the children would be allowed but that surveillance would be made. A visit by Lincoln County Social Workers showed a messy, unkempt, odiferous home.

Since this finding was based upon reports from social investigators and not included in the evidence of the formal hearing, petitioner contends that she was deprived of her constitutional right to confrontation and cross-examination of the authors of those reports and that such reports were considered by the court in violation of Juvenile Court Rule 4.4. With this contention we agree.

The court in *In re Ross,* 45 Wn.2d 654, 655, 277 P.2d 335 (1954), said:

We do hold, however, that before parents can be permanently deprived of all custody, control, care, or parental rights over their children, they must be accorded the opportunity of a hearing, and at such hearing the witnesses should be sworn, and the failure to comply with a request that the witnesses be sworn is prejudicial error.

Further, at such hearings the usual rules relative to the admissibility of evidence should be applied. Fathers and mothers should not be deprived of their parental rights on hearsay, which is but another form of unsworn testimony.

Commenting upon this case, in *In re Martin,* 3 Wn. App. 405, 412, 476 P.2d 134 (1970), the Court of Appeals said:

[W]e believe the court meant no more than that the entire record of the parenthood may be presented to the court, but it must be by competent evidence. Witnesses must be sworn and the parents accorded the same right of cross-examination that they would have in any civil action. This interpretation is consistent with JuCR 4.4(a):

The rules of evidence shall be followed in the con-

duct of the hearing. No social file or social study shall be considered by the court in connection with the fact finding hearing.

In the instant case, the trial court should have reopened the hearing to allow the social investigators to give their testimony in the presence of the petitioner, where they could have been cross-examined by her counsel, and she would have been afforded the opportunity for rebuttal.

Accordingly, the judgment of deprivation is reversed with instructions to reopen the hearing for presentation of testimony in accordance with this opinion and for such further evidence as the trial court deems necessary to update petitioner's present status.

MUNSON and McINTURFF, JJ., concur.