FILED
COURT OF APPEALS
DIVISION II

2013 MAY -7 AM 11: 47

STATE OF WASHINGTON
BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Welfare of: | No. 43507-1-II |
| X.T., | |
| A Minor Child. | ORDER PUBLISHING OPINION |

Appellant, by and through his attorney, moves this court for publication of its unpublished opinion filed on March 5, 2013. After review the records and files herein, the court grants the motion.

It is ORDERED that the final paragraph that reads "A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040, it is so ordered." is deleted.

It is further ORDERED that the opinion is now published.

DATED: this ____7TH____ day of ____MAY____, 2013.

PANEL: Jj. Quinn-Brintnall, Penoyar, Bjorgen

FOR THE COURT:

_____
Presiding Judge

FILED
COURT OF APPEALS
DIVISION II

2013 MAR -5 AM 9: 27

STATE OF WASHINGTON

BY_____
DEPUTY

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

In re the Welfare of:

X.T.

A Minor Child.

No. 43507-1-II

UNPUBLISHED OPINION

PENOYAR, J. — JT is the father of XT, born April 8, 2011. He appeals the juvenile court's order finding XT to be a dependent child, arguing that the Department of Social and Health Services (Department) failed to present sufficient evidence that XT is a dependent child because the Department's evidence was primarily inadmissible hearsay. JT contends that the juvenile court erred by considering hearsay evidence and, consequently, that substantial evidence does not support its finding of dependency. We considered his appeal on an accelerated basis under RAP 18.13A, and reverse the juvenile court and remand for further proceedings.[1]

FACTS

The Department filed a dependency petition as to XT on March 6, 2012. The matter was originally set for fact-finding on April 24, 2012, but no Indian expert was available, neither parent was present, and the mother's counsel needed a continuance, so the hearing was continued to May 4. On that day, the juvenile court held a fact-finding hearing on the dependency petition. Stand-in counsel for the mother requested a continuance because her attorney was unable to attend the proceedings. The court allowed testimony to be taken, and ruled that the mother's

---

[1] A commissioner of this court initially considered this appeal and then transferred it to a panel of judges.

counsel could later make a motion to "undo" any resulting order. Report of Proceedings (RP) at 6; 2 RP at 6.

JT was not present at the dependency fact-finding hearing. The sole witness was Naz Qureshi, the Department social worker assigned to the case. Shortly after the hearing began, JT's counsel objected to Qureshi's use of her notes. The juvenile court overruled JT's objection, but allowed a standing objection to the use of her notes throughout the hearing. RP at 12 (granting JT a standing objection to Qureshi's testimony "when she's relying on the files"). The following testimony was based on Qureshi's review of the Department's file on XT.

The Department received a referral about neglect of XT in November 2011. The referral noted concern about drug use and excessive garbage in the house where XT lived. At the time, XT was living in a home with ten people including his mother, his maternal grandmother, and her family. JT was incarcerated during that time period. Once he was released, in mid-February 2012, JT assumed care of XT. He did not live with XT's mother, and described their relationship as "on-and-off." RP at 15. He lived with his relatives after his release.

The Department received a second referral regarding XT on March 2, 2012, from Mary Bridge Children's Hospital. XT had been diagnosed with a subdural hematoma, for which he received surgery. The parents were unable to explain the injury to the Child Protective Services investigator, Christina Murillo, and doctors concluded that the trauma was not accidental. Doctors believed the hematoma was from an earlier injury that had gone untreated, which likely had taken place at the time JT was incarcerated. XT was placed in protective custody on March 5.

Qureshi further explained that the file on XT also showed that he was seen by a doctor in October 2011 about a possible head injury. JT reported to the doctor that XT had been shaking

2

for approximately 25 seconds, and then his body went limp. JT attempted to resuscitate XT. This incident was suspected to have resulted from physical abuse.

According to Qureshi's review of the files, JT has a lengthy criminal history, including convictions for driving without a license, malicious mischief, obstructing justice, possession of marijuana, vehicle prowling, driving under the influence, driving while license suspended, and controlled substances violations. No exhibits proving these convictions were admitted at the hearing.

From her own knowledge, Qureshi testified that after filing the dependency petition, the Department requested that JT complete urinalyses. While optional, JT has not undergone any testing. JT had not visited XT since April 9, despite the Department offering him visits. When he was engaging in visitation, JT was often late, sometimes by up to an hour. Qureshi acknowledged never having visited JT's home, where he lived with XT after his release from jail.

Qureshi opined that there was imminent risk to XT at the time the dependency petition was filed. She testified that JT is not currently fit to parent XT because he has not been consistent with visitation, has not complied with the Department's request to undergo urinalyses, and has not provided XT a safe and stable living environment. The juvenile court found that XT was dependent under RCW 13.34.030(5)(c).[2] JT appeals.

---

[2] When the proceedings resumed the following week, the mother's attorney and JT were present. The State offered to take testimony on the fact-finding hearing again to allow the mother's attorney to participate, although it argued that the May 4 dependency finding was still valid. The fact-finding proceeded as to the mother, but JT's attorney objected, and the court continued the disposition as to him.

ANALYSIS

JT argues that the Department presented insufficient evidence to support the juvenile court's finding of a dependency under RCW 13.34.030(5)(c). We review an order of dependency to determine whether substantial evidence supports the juvenile court's findings of fact and the findings support the conclusions of law. *In re Dependency of M.P.*, 76 Wn. App. 87, 90, 882 P.2d 1180 (1994). Substantial evidence exists if, when viewing the evidence in the light most favorable to the prevailing party, a rational trier of fact could find the fact more likely than not to be true. *M.P.*, 76 Wn. App. at 90-91; *In re Dependency of C.B.*, 61 Wn. App. 280, 285-86, 810 P.2d 518 (1991). We do not weigh the evidence or witness credibility. *In re Welfare of Sego*, 82 Wn.2d 736, 739-40, 513 P.2d 831 (1973).

A child is dependent under RCW 13.34.030(5)(c) if she "[h]as no parent, guardian, or custodian capable of adequately caring for the child, such that the child is in circumstances which constitute a danger of substantial damage to the child's psychological or physical development." Under RCW 13.34.030(5)(c), it is unnecessary to find abuse or neglect in order to find a child dependent. *In re Dependency of Schermer*, 161 Wn.2d 927, 944, 169 P.3d 452 (2007). A dependency finding need not be based on proof of actual harm, but can rely instead on a danger of harm. *Schermer*, 161 Wn.2d at 951. A juvenile court has broad discretion in determining when there exists a risk of harm. *Schermer*, 161 Wn.2d at 951.

JT contends that the Department failed to prove that he suffered from any parenting deficiency justifying the dependency. He argues that the facts Qureshi testified to were only admissible as her expert opinion, not as proof of the assertions themselves.

A juvenile court "has broad discretion in dependency and termination proceedings to receive and evaluate evidence in light of a child's best interest." *In re Interest of J.F.*, 109 Wn.

4

App. 718, 728, 37 P.3d 1227 (2001) (citing *In re Dependency of C.B.*, 61 Wn. App. 280, 287, 810 P.2d 518 (1991)). But such discretion does not permit juvenile courts to disregard evidence rules, especially where the deprivation of parental rights is involved. *In re Welfare of Ross*, 45 Wn.2d 654, 655-56, 227 P.2d 335 (1954); *In re Welfare of Baum*, 8 Wn. App. 337, 339-40, 506 P.2d 323 (1973). RCW 13.34.110(1) and JuCR 1.4(c) require juvenile courts to observe the rules of evidence in dependency and termination proceedings.

"Fathers and mothers should not be deprived of their parental rights on hearsay, which is but another form of unsworn testimony." *Ross*, 45 Wn.2d at 655-56. Social workers may offer hearsay testimony to show how they arrived at their opinions. ER 703, 705; *In re Welfare of J.M.*, 130 Wn. App. 912, 924-25, 125 P.3d 245 (2005). But a social worker's "use of the written reports of absent witnesses is not substantive evidence;" rather, such reports are only admissible to show the basis for the worker's opinion. *J.M.*, 130 Wn. App. at 924.

The juvenile court, in ruling that Qureshi's testimony was admissible, did not limit consideration of the testimony to demonstrate how Qureshi arrived at her opinions. Rather, the juvenile court considered the hearsay in Qureshi's testimony as offered for the truth of the matter asserted because it adopted all of the allegations in the dependency petition, finding that they were supported. The portion of Qureshi's testimony that was based on her own knowledge of events did not support those findings of fact. The court therefore abused its discretion in admitting the hearsay in Qureshi's testimony. *See Baum*, 8 Wn. App. at 339.

We next address whether the error was prejudicial or harmless. An erroneous admission of evidence is "not prejudicial unless, within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred." *State v. Bourgeois*, 133 Wn.2d 389, 403, 945 P.2d 1120 (1997) (quoting *State v. Tharp*, 96 Wn.2d 591, 599, 637 P.2d 961

(1981)). The remaining evidence was that JT had missed several recent visits with XT and had been late to others and that JT had declined to submit to the urinalyses the Department had requested of him, which were not mandatory. It is not reasonably probable that on this scant evidence the juvenile court based its conclusion that XT is a dependent child. No evidence was put forth as to how a couple weeks' worth of missed visits and the father's failure to submit to urinalyses constituted a risk of "substantial damage to the child's psychological or physical development." RCW 13.34.030(5)(c). In the absence of the testimony based on inadmissible hearsay, substantial evidence did not support the juvenile court's findings of fact.

Accordingly, we reverse the juvenile court's order finding XT dependent as to JT and remand.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Penoyar, J.

We concur:

Quinn-Brintnall, J.

Bjorgen, J.

6