IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the Dependency of: | ) | No. 32161-4-III |
| | ) | Consolidated with No. 32162-2-III; |
| A.A., | ) | No. 32163-1-III; and No. 32164-9-III |
| L.A. | ) | |
| J.A. Jr. | ) | |
| A.A. | ) | |
| | ) | |
| | ) | UNPUBLISHED OPINION |
| | ) | |

BROWN, J. — A.T. appeals the Columbia County juvenile court rulings granting the Department of Social and Health Services' (DSHS) request to dismiss the State's four dependency petitions concerning Al.A., a seven-year-old girl; J.A., a six-year-old boy; L.A., a four-year-old girl; and Ad.A., a three-year-old boy. A.T. (mom) and J.A., Sr. (dad) are the married but informally separated parents of the four children. Mom contends the juvenile court erred in not finding the children dependent as to dad. Alternatively, mom contends the court lacked authority to place the children with dad with discretion to decide appropriate contacts with mom. Because the juvenile court acted within its fact-finding discretion when deciding dad was, under RCW 13.34.030(6)(c), capable of adequately caring for the four children, we affirm.

No. 32161-4-III; consol. w/ No. 32162-1-III
No. 32163-1-III; No. 32164-9-III
*In re the Dependency of A.A.*

FACTS

In August 2013, the children and mom were living in a Walla Walla shelter separated from dad. Ad.A. suffered from severe eczema, and, as a result of non-treatment by mom, the condition was inflamed. Shelter staff, who observed the children loudly crying with soap in their eyes, were concerned with the aggressive manner in which mom bathed the children. The shelter's case manager heard strikes or slaps to the children while mom bathed them and saw bruising on the children. The staff reported concerns to DSHS about mom's verbal abuse and neglectful treatment of the children. Mom relocated to a new shelter when she learned of the report. DSHS found the family at a park, and local police assisted DSHS in securing protective custody. The children were extremely hungry and thirsty, inadequately clothed, and several presented with a staph infection and sores on their bodies. Ad.A. was subsequently treated for scabies and eczema. DSHS filed four dependency petitions for the four children, alleging negligent or maltreatment of the children by mom. At the initial shelter care hearing, dad requested custody of his children. The children were placed in out-of-home care while DSHS investigated dad.

DSHS learned the children had been found dependent in California in August 2010, after authorities there received various domestic violence reports. California placed the children in foster care as mom was not able to protect the children from further domestic violence. Apparently the parents separated. Dad was convicted of misdemeanor domestic violence against mom. The children remained in California

2

No. 32161-4-III; consol. w/ No. 32162-1-III
No. 32163-1-III; No. 32164-9-III
*In re the Dependency of A.A.*

foster care for over a year while mom and dad received services to facilitate the children's return. Eventually, the children were returned to dad's care. Both parents were allowed contact with the children. In 2012, mom and dad reconciled and moved to Washington. California dismissed its dependency case. From November 2012 to May 2013, in order to prevent the need for out-of-home placement, DSHS provided services. In February 2013, dad moved to Nevada for school, leaving his children in Washington with mom, and intending to return to provide a better life for his family. He graduated in July 2013 with a degree in phlebotomy and laboratory technology. While in Nevada, a phone argument between mom and dad resulted in mom serving dad with a restraining order. The order was later modified to grant dad visitation.

On January 2, 2014, the juvenile court held a fact-finding hearing. DSHS recommended the children be placed with dad and asked the court to dismiss the dependency petitions based on reports provided by DSHS caseworker Loni Conklin. Mom alone objected to placing the children in dad's care and testified in opposition, pointing out her view of dad's parental deficiencies.

Ms. Conklin testified dad was a capable parent, having successfully completed domestic violence classes, a mental health evaluation and counseling, parenting classes, all requested urine analyses, and drug and alcohol counseling; he signed up for additional parenting classes. Dad's visits were exceptional: the children were extremely happy to see him, hugged him, and demonstrated no fear. Dad provided meals, planned activities, capably handled all four children at once, and appropriately

3

No. 32161-4-III; consol. w/ No. 32162-1-III
No. 32163-1-III; No. 32164-9-III
*In re the Dependency of A.A.*

responded to the children's severe behavioral problems. Ms. Conklin found dad had a realistic idea of what he needed to do to raise the children. Additionally, dad had a helpful support system in place. In responding to concerns about dad's history of domestic violence, Ms. Conklin explained DSHS's policy is to consider whether a parent corrected his deficits and whether those deficits affected the children's safety. Dad demonstrated no history of domestic violence other than when he was with mom, and he had no intention of reuniting with mom. Furthermore, dad was forthcoming with his history and promptly provided all requested information.

Ms. Conklin addressed mom's psychological evaluation and visits with the children. Mom was diagnosed with a personality disorder that manifested in her having difficulty recognizing her parenting deficits, placing blame on others, and not taking responsibility for the children's behavioral, emotional, educational, and psychological difficulties. During mom's visits, she spent time on the phone and became belligerent when asked to put it away. She had unrealistic expectations for the children. She purposely excluded one child when she brought gifts. She used demeaning words when talking to the children. While the children were placed in different homes, all caregivers said the children had night terrors, acted out, were scared, and searched for food after a visit with mom. In contrast, after dad's visits, the children were calm and behavioral issues decreased.

Dad related he planned to move to California and set up services and counseling with the same providers his children had used before, as well as school and activities.

4

No. 32161-4-III; consol. w/ No. 32162-1-III
No. 32163-1-III; No. 32164-9-III
*In re the Dependency of A.A.*

He had a job in California and had submitted a rental application for an apartment. He said he was no longer on parole and only had to pay fines.

In closing, the children's guardian ad litem and attorney concurred with DSHS's recommendations. Mom argued her concerns that giving dad the children meant he could leave the state with the children and effectively cut off her contact with them, as there was no parenting plan in place and she could not afford to get one in a different state.

The juvenile court granted DSHS's motion to dismiss the dependencies, reasoning dad had done nothing to cause the children to be removed from mom's care. The court agreed with DSHS's position and found dad was able and capable of taking care of all the children. The court ordered the children be returned to dad, gave him discretion on whether mom could contact the children, and dismissed the dependency petition. Mom appealed.

## ANALYSIS

### A. Dependency Dismissals

The issue is whether the juvenile court erred by abusing its fact-finding discretion when finding the children were not dependent and dismissing the dependency petitions.

Parents' "fundamental liberty interest in the care and welfare of their minor children" must be balanced with the State's "interest in protecting the physical, mental, and emotional health of children." *In re Dependency of Schermer*, 161 Wn.2d 927, 941, 169 P.3d 452 (2007). Unless a child's right to nurture, physical and/or mental health, or

5

No. 32161-4-III; consol. w/ No. 32162-1-III
No. 32163-1-III; No. 32164-9-III
*In re the Dependency of A.A.*

safety is endangered, "the family unit should remain intact." RCW 13.34.020. But when the rights of the child and the legal rights of the parents conflict, the child's rights prevail, as "the child's health and safety [are] the paramount concern." *Id.*

Declaring a child "dependent" transfers legal custody to the State. *Schermer*, 161 Wn.2d at 942. After filing a dependency petition, a fact-finding hearing is held to decide if the allegations are true. *Id.* The petitioner must show "by a preponderance of the evidence that the child meets one of the statutory definitions of dependency." *Id.* Washington partly defines a "dependent child" as a child who "has no parent . . . capable of adequately caring for the child, such that the child is in circumstances which constitute a danger of substantial damage to the child's psychological or physical development." RCW 13.34.030(6)(c). Dependencies based on RCW 13.34.030(6)(c) do not require a finding of parental unfitness; instead, they "allow[] consideration of both a child's special needs and any limitations or other circumstances which affect a parent's ability to respond to those needs." *Schermer*, 161 Wn.2d at 944. A child is not dependent if a capable parent exists. *In re Walker*, 43 Wn.2d 710, 715, 263 P.2d 956 (1953).

When evaluating evidence to determine whether a child is dependent, trial courts have broad discretion and considerable flexibility to reach "'a decision that recognizes both the welfare of the child and parental rights.'" *Schermer*, 161 Wn.2d at 952 (quoting *In re the Welfare of Becker*, 87 Wn.2d 470, 478, 553 P.2d 1339 (1976)). A court has no required factors to consider. *Becker*, 87 Wn.2d at 477 (interpreting predecessor

6

No. 32161-4-III; consol. w/ No. 32162-1-III
No. 32163-1-III; No. 32164-9-III
*In re the Dependency of A.A.*

statute). Decisions to dismiss a dependency cannot "be based upon hunches or snap judgments": all parties have a right to be heard, and children need a well-considered decision. *In re Dependency of R.H.*, 129 Wn. App. 83, 88, 117 P.3d 1179 (2005).

Where a trial court acts as a fact-finder, "appellate review is limited to whether substantial evidence supports the trial court's findings and whether the findings support its conclusions of law." *Schermer*, 161 Wn.2d at 940. "Substantial evidence exists if, when viewing the evidence in the light most favorable to the prevailing party, a rational trier of fact could find the fact more likely than not to be true." *In re Welfare of X.T.*, 174 Wn. App. 733, 737, 300 P.3d 824 (2013). Furthermore, appellate courts do not weigh evidence or credibility of witnesses. *Id.*

Here, the juvenile court weighed the evidence and decided witness credibility. It found dad to be a parent capable of adequately caring for the children within the meaning of RCW 13.34.030(6)(c). The court found dad went above and beyond when responding to every request from DSHS. Dad provided certificates of completion for requested services including domestic violence classes, drug and alcohol counseling, mental health evaluations and counseling, and parenting classes. The court stated dad was successfully putting into practice the skills he learned in the parenting classes, which led to him appropriately handling stressful situations. Dad showed his willingness to work on his parenting deficiencies and provided evidence of the steps he took to remedy his problems. He had a job waiting for him and had a plan for the children's

7

No. 32161-4-III; consol. w/ No. 32162-1-III
No. 32163-1-III; No. 32164-9-III
*In re the Dependency of A.A.*

care. On the other hand, DSHS's evidence concerning mom's parental deficiencies was essentially unrebutted.

While the juvenile court gave mom an opportunity to be heard, it ultimately gave more weight to Ms. Conklin's and dad's testimony. Both indicated dad's visitations were great: the children were happy to see him and immediately reestablished a rapport with him. This was buttressed by reports from the individual caregivers concerning the children's behavior after visits with dad. When mom expressed concern about the nine month separation between dad and the children because of the restraining order, dad testified he remained in contact with Child Protective Services to stay up-to-date in his children's lives. He related the allegations in the Washington restraining order were a rehash of the California incidents already addressed by the California courts. Contrary to mom's assertions, dad showed he was adept at handling the children and demonstrated awareness of the children's special needs.

Considering all, we conclude substantial evidence supports the court's findings.

### B. Placement

The issue is whether the juvenile court had authority to issue its placement order returning the four children to dad upon dismissing the dependencies. Mom contends the court lacked jurisdiction to enter the placement order.

Washington juvenile courts have exclusive original jurisdiction over proceedings "[r]elating to children alleged or found to be dependent." RCW 13.04.030(1)(b). Once a

8

No. 32161-4-III; consol. w/ No. 32162-1-III
No. 32163-1-III; No. 32164-9-III
*In re the Dependency of A.A.*

dependency petition is filed, juvenile courts have jurisdiction, and a fact-finding hearing is needed. *R.H.*, 129 Wn. App. at 88.

The central aim of a dependency hearing is to determine what course of action serves the child's best interests. *Schermer*, 161 Wn.2d at 942. To that end, liberal construction of juvenile court statutes is needed to ensure a child's welfare is the main consideration. *McDaniel v. McDaniel*, 64 Wn.2d 273, 276, 391 P.2d 191 (1964). However, a "juvenile court has no jurisdiction over a minor unless it is proved that the minor is . . . a dependent child." *In re Crozier*, 44 Wn.2d 901, 904, 272 P.2d 136 (1954).

In dependency proceedings, discretionary placement decisions are reviewed for an abuse of discretion. *In re Dependency of A.C.*, 74 Wn. App. 271, 276, 873 P.2d 535 (1994). "A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds." *In re Marriage of Kovacs*, 121 Wn.2d 795, 801, 854 P.2d 629 (1993).

When placing a child, "the best interests of the child are the court's paramount concern." *In re Dependency of R.W.*, 143 Wn. App. 219, 223, 177 P.3d 186 (2008). Because each case is fact specific, no exact criteria exist for determining what the child's best interests are. *Id.* Even though a child's interests are the paramount concern, the parents' interests still have weight: courts are directed "to adopt a program which will 'least interfere with family autonomy, provided that the services are adequate to protect the child.'" *In re Dependency of J.B.S.*, 123 Wn.2d 1, 12, 863 P.2d 1344 (1993) (quoting RCW 13.34.130(1)(a)). However, if it is not in the child's best interests,

9

No. 32161-4-III; consol. w/ No. 32162-1-III
No. 32163-1-III; No. 32164-9-III
*In re the Dependency of A.A.*

a court is not required to reunite children with the parent who had custody at the time of the dependency action. *R.W.*, 143 Wn. App. at 223 (applying this proposition to a child adjudicated as dependent).

In sum, the juvenile court had unquestioned statutory authority to hold a fact-finding hearing and to enter an order on the dependency petition. Because the court found dad to be a capable parent, it could not find the children dependent. Even so, the court still had to ensure the course of action taken after the fact-finding hearing was in the children's best interests. As such, the court had authority to determine that living with dad and granting him discretion as to mom's visitation with the children was in the children's best interests. The court properly recognized it was not acting as a domestic relations court, leaving it to the father and mother to apply to an appropriate forum to resolve the status of their marriage and concurrently, the formal residential placement of their children. In so deciding, the court did not abuse its discretion in choosing to place the children with the sole parent found presently capable of adequately caring for the children in their best interests.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW

No. 32161-4-III; consol. w/ No. 32162-1-III
No. 32163-1-III; No. 32164-9-III
*In re the Dependency of A.A.*

2.06.040.

_____
Brown, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Fearing, J.