# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Dependency of:<br><br>T.T.B.,<br><br>A Minor Child. | No. 55550-6-II<br><br><br><br>UNPUBLISHED OPINION |

VELJACIC, J. — KB is the mother of TTB, a boy born in November 2010. She seeks review of the juvenile court's October 26, 2020 order of dependency and out-of-home placement disposition. We conclude that evidentiary error during the dependency hearing requires reversal. We further conclude that the out-of-home placement issue is moot because TTB is currently placed with KB. Accordingly, we reverse the order of dependency and remand for further proceedings.

## FACTS

### I.   BACKGROUND

Doctors diagnosed TTB with ganglioglioma, a low-grade cancerous spinal tumor, in 2018. Because of the tumor, he also developed scoliosis. TTB underwent two surgeries in 2018 to remove the tumor, but a small amount remained. One of TTB's medical providers emphasized that TTB "*needs follow up on the recommended schedule. The cancer is at risk of returning, and without regular surveillance when it comes back, or if a secondary malignancy develops, it could be too late for treatment.*" Clerk's Papers (CP) at 3. To monitor the tumor and strengthen his

range of motion, TTB needed to attend regular follow-up appointments for oncology, neurosurgery, magnetic resonance imaging (MRI), and physical therapy.

After TTB's surgeries, KB did not consistently follow the recommendations of the medical professionals involved in his healthcare and recovery. Mary Bridge Children's Hospital had no record of TTB attending any appointments from May 2019 through April 2020. TTB's medical team at Mary Bridge, which included Dr. Tamara Chang, "stressed that [TTB's] condition is serious, and if it gets worse, it could lead to paralysis[,] loss of function[,] or death." CP at 5. The Department of Children, Youth and Families (Department) was also concerned that TTB had not been to school regularly and nurses there were unable to check on him.

Child Protective Services (CPS) investigator Ciara Murphy, who began working TTB's case in April 2020, spoke with hospital social worker Jessica Pabst and attempted to contact KB by calling and sending text messages. Murphy also went to KB's home and sent a letter. Despite these attempts, and making contact with KB's mother, Murphy was unable to connect with KB. Murphy opined that KB rejected all efforts from the Department to contact her.

On April 28, 2020, after no contact from KB for months, Dr. Chang contacted CPS by letter, which stated:

> [TTB] and his ganglioneuroma need regular follow up and imaging. [If left] unchecked, he would be at risk to be paralyzed, and unable to control bladder or bowel control, which is considered a medical emergency and life threatening. [TTB] MUST be followed by pediatric oncology regularly for monitoring.
>
> . . . [TTB] also needs to be followed closely by pediatric orthopedic surgery, neurosurgery, primary care and receive services regularly with physical therapy and occupational therapy. Anything less than this level of care is suboptimal, below an acceptable standard of medical care, and puts him at risk for lifelong disability.

Ex. 3.

2

The next day, the Department filed a dependency petition for TTB. KB participated in voluntary services, including a psychological and parenting evaluation, a urinalysis, and parenting classes.

## II.     DEPENDENCY FACT FINDING

At the dependency fact finding, Department social worker Tanisha Hampton testified about a Family Team Decision-Making meeting with KB. Hampton stated that KB had several explanations as to why TTB had not been to his scheduled appointments. For example, KB stated that TTB's school no longer employed the physical therapist due to cutbacks, that her car had broken down, and that she did not take TTB due to COVID-19. KB also expressed that TTB had been sexually assaulted inside an MRI machine. She further alleged that she was unable to take him to appointments because the hospital overbooked. Hampton described KB's answers about TTB's medical care as inconsistent and contradictory to the information she received from other sources. Hampton explained that working with KB was challenging and that she did not believe KB understood why the Department was concerned about TTB's care.

Dr. Chang testified about the letter she wrote to CPS. Dr. Chang said that she wrote the letter at the request of a hospital social worker not in anticipation of litigation, but rather because her medical team had not heard from KB in many months and they were "very worried." 2 Report of Proceedings (RP) at 259. Dr. Chang did not testify to the contents of the letter. Over KB's objection, the juvenile court admitted the letter into evidence under the hearsay exception for statements made for the purposes of medical treatment in ER 803(a)(4). The court held that the letter was "clearly" written for the purposes of treatment. 2 RP at 261.

Terrill Boss, a visitation supervisor at Connections Counseling Services NW, testified about five visits she supervised between KB and TTB, which she documented in a "Family Time

Report." *See* Ex. 6. During each visit, Boss had to regularly remind KB not to discuss the case with TTB. At a visit on June 18, 2020, KB responded aggressively to Boss's repeated reminders not to discuss the case, stating that her attorney told her she could talk about anything she wanted and that "she was in charge." 1 RP at 100. Because of this incident, the next visit was virtual. However, that visit only lasted five minutes because KB was hostile toward Boss and TTB began crying. Over KB's objection, the juvenile court admitted Boss's Family Time Report under the business records exception.

Dr. Paula van Pul, a contractor with Clinical Forensic Psychology, testified about her psychological evaluation and parenting assessment report that she drafted regarding KB. The report was based in part on statements KB allegedly made to Dr. van Pul during two interviews. Dr. van Pul's diagnostic impression was that KB had a mixed personality disorder with paranoid features. Dr. van Pul interpreted KB's several rationalizations as to why she did not take TTB to his MRI appointments as diverging from reality. However, Dr. van Pul concluded that KB "truly believed that something [in the MRI machine] had happened to [TTB]" and that the rationalizations she gave were true. 2 RP at 295. Dr. van Pul opined that KB's "anxiety and paranoia and suspicion around the people that were providing [TTB's] care . . . would prevent her from re-engaging with the medical service providers that [TTB] needs to be engaged with for his health." 2 RP at 297. Thus, Dr. van Pul recommended that KB needs to go on a psychotropic prescribed by a psychiatrist and "participate in medication management and mental health treatment and stay away from self medicating with marijuana." 2 RP at 298. Dr. van Pul did not provide an opinion to a reasonable medical certainty as to the diagnosis or that the diagnosis was the cause of KB's neglect/parenting deficiency. Over KB's objection, the juvenile court admitted Dr. van Pul's psychological evaluation.

The juvenile court concluded that TTB "ha[d] no parent, guardian, or custodian capable of adequately caring for [him], such that [he] is in circumstances which constitute a danger of substantial damage to [his] psychological or physical development." CP at 222; *see also* RCW 13.34.030(6)(c). The court also denied KB's request for an in-home placement disposition but ordered that TTB could return home in two weeks if KB complied with all court-ordered services. KB complied and TTB was returned home on November 6, 2020. KB appeals the court's dependency order and out-of-home placement disposition.

ANALYSIS

KB contends that the juvenile court abused its discretion in admitting three exhibits that she claims are hearsay: Dr. Chang's letter, Boss's Family Time Report, and Dr. van Pul's psychological evaluation and parenting assessment report. KB argues that the admission of these three exhibits "was prejudicial and deprived [her] of her due process right to a fair hearing." Mot. for Accel. Rev. at 21. We agree as to Dr. Chang's letter and Dr. van Pul's report.

I.    DEPENDENCY

A.    Legal Principles

Parents have a fundamental liberty interest in the care and welfare of minor children. *In re Dependency of Schermer*, 161 Wn.2d 927, 941, 169 P.3d 452 (2007). The State also has an interest in protecting the physical, mental, and emotional health of children. *Id*. at 941. "It is well established that when a child's physical or mental health is seriously jeopardized by parental deficiencies, 'the State has a parens patriae right and responsibility to intervene to protect the child.'" *Id*. at 941 (quoting *In re Welfare of Sumey*, 94 Wn.2d 757, 762, 621 P.2d 108 (1980)). "When the rights of basic nurture, physical and mental health, and safety of the child and the legal

rights of the parents are in conflict, the rights and safety of the child should prevail." RCW 13.34.020.

Under RCW 13.34.030(6)(c), a child is dependent if he or she has "no parent, guardian, or custodian capable of adequately caring for the child, such that the child is in circumstances which constitute a danger of substantial damage to the child's psychological or physical development." There are no specific factors the juvenile court must consider when determining whether a parent is capable of adequately parenting a child; rather, the inquiry is highly fact specific. *Schermer*, 161 Wn.2d at 951-52. The Department, however, need not prove that a parent is unfit before a dependency can be established. In *Schermer*, the Supreme Court held that a dependency finding "does not turn on parental 'unfitness' in the usual sense. Rather, it allows consideration of both a child's special needs and any limitations or other circumstances which affect a parent's ability to respond to those needs." *Id*. at 944. Similarly, a dependency finding under RCW 13.34.030(6)(c) need not be based on proof of actual harm, but instead can rely on a danger of harm. *Id.* at 951. A juvenile court has broad discretion in determining when there exists a risk of harm. *Id*.

Because a dependency serves the important function of allowing state intervention in order to remedy family problems and provide needed services, it retains a relatively lenient preponderance standard. *Schermer*, 161 Wn.2d at 942; RCW 13.34.110. We accordingly review an order of dependency to determine whether substantial evidence supports the juvenile court's findings of fact and whether the findings support the conclusions of law. *In re Dependency of M.P.*, 76 Wn. App. 87, 90, 882 P.2d 1180 (1994). Substantial evidence exists if, when viewing the evidence in the light most favorable to the prevailing party, a rational trier of fact could find the fact more likely than not to be true. *Id*. at 90-91. We do not weigh the evidence or assess witness credibility. *Id*. at 91.

The rules of evidence apply to a dependency hearing, RCW 13.34.110(1); ER 1101(c)(3); *In re Dependency of K.N.J.*, 171 Wn.2d 568, 579, 257 P.3d 522 (2011). Hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c).

There are various exceptions to the rule against hearsay, including business records and statements made for the purposes of medical diagnosis or treatment. RCW 5.45.020; ER 803(a)(4). A business record is:

> A record of an act, condition or event, shall in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

RCW 5.45.020. If a report requires use of the declarant's "skill and discretion," then the business record exception does not apply. *State v. Hopkins*, 134 Wn. App. 780, 790, 142 P.3d 1104 (2006). Separately, under ER 803(a)(4), statements made for the purposes of medical diagnosis or treatment are admissible.

If hearsay evidence is wrongly admitted, this court must determine whether the admission was prejudicial or harmless. *In re Welfare of X.T.*, 174 Wn. App. 733, 739, 300 P.3d 824 (2013). The admission is not prejudicial "'unless, within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred.'" *Id*. at 739 (internal quotation marks omitted) (quoting *State v. Bourgeois*, 133 Wn.2d 389, 403, 945 P.2d 1120 (1997)). Evidentiary decisions are reviewed for abuse of discretion. *In re Adoption of M.J.W.*, 8 Wn. App. 2d 906, 922, 438 P.3d 1244 (2019).

B.      Evidentiary Rulings

1.      Dr. Chang's Letter

KB argues that the juvenile court abused its discretion in admitting Dr. Chang's letter to CPS because it did not qualify as a hearsay exception for statements made for the purpose of medical diagnosis or treatment.  Instead, KB contends, Dr. Chang's letter described TB's medical diagnosis or treatment and was "not made by the declarant with the purpose of the declarant receiving medical diagnosis or treatment."  Mot. for Accel. Rev. at 14.  We agree.

Under ER 803(a)(4), statements made for the purposes of medical diagnosis or treatment are admissible.  But ER 803(a)(4) "creates a hearsay exception for statements *made for purposes of* medical diagnosis or treatment, not a physician's statement *describing* medical diagnosis or treatment."  5C KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 803.20, at 73 (6th ed. 2016).  Dr. Chang's letter was to CPS and not made by the declarant with the purpose of the declarant receiving medical diagnosis or treatment.  Accordingly, it does not fall under the ER 803(a)(4) hearsay exception.  The juvenile court erred by admitting Dr. Chang's letter.

We next look to whether the admission was prejudicial.  *X.T.*, 174 Wn. App. at 739.  The admission of Dr. Chang's letter is "'not prejudicial unless, within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred.'"  *Id*. at 739 (internal quotation marks omitted) (quoting *Bourgeois*, 133 Wn.2d at 403).  Dr. Chang's letter stated that TTB had not been seen at the oncology clinic since May 2019.  She expressed concern that TTB's life was at risk if the tumor was growing unchecked and that TB risked lifelong disability absent regular therapy.  The Department's dependency petition was centered on KB's failure to obtain medical treatment for TTB.  Dr. Chang's letter was strong evidence to support

8

this allegation. It is reasonably probable that without the letter the outcome of the dependency proceedings would have been different. For this reason, we conclude the admission of the letter was prejudicial.

2.      Boss's Family Time Report

KB next argues that the juvenile court abused its discretion in admitting Boss's Family Time Report. KB argues that Boss's "notes about her subjective impressions and opinions of the visit involved her use of her skill, judgment, and discretion, and were not notations of objective facts." Mot. for Accel. Rev. at 12. We disagree.

Boss's Family Time Report was a business record under RCW 5.45.020. As Boss explained, creating a Family Time Report is a normal part of her job and is done in order to keep track of what happened during visits; a review of those documents shows that they contain a contemporaneous factual account of the visit and do not require use of skill or judgment to create them. Therefore, we conclude the court did not abuse its discretion in admitting Boss's Family Time Report under the business record exception.

3.      Dr. Van Pul's Psychological Evaluation and Parenting Assessment

KB next argues that Dr. van Pul's psychological evaluation and parenting assessment report did not qualify as a business record or a statement made for the purpose of medical diagnosis or treatment to be admitted as an exception to the hearsay rule. Specifically, KB argues that the report contained layers of hearsay. We agree.

An out-of-court statement that repeats another out-of-court statement constitutes hearsay within hearsay or double hearsay. *State v. Alvarez-Abrego*, 154 Wn. App. 351, 366, 225 P.3d 396 (2010). Hearsay within hearsay is admissible only if each of the hearsay statements is subject to one of the hearsay exceptions. ER 805. The juvenile court did not specify what exception it

admitted Dr. van Pul's evaluation and assessment under. The report is based in part on statements made by KB during two interviews. The Department concedes, and we agree, that "there are likely parts of the document that may not be properly admitted." Resp. to Mot. for Accel. Rev. at 19. Therefore, we conclude the juvenile court abused its discretion in admitting the entirety of Dr. van Pul's psychological evaluation and parenting assessment report. We also conclude the cumulative effect of admitting both Dr. Chang's letter and Dr. van Pul's report was prejudicial.

## II.      OUT-OF-HOME PLACEMENT DISPOSITION

KB next argues that the juvenile court erred by ordering an out-of-home dependency disposition because she was an available parent, and by finding that TTB would suffer manifest danger of serious abuse or neglect in KB's home because it is not supported by sufficient evidence. The Department concedes that the finding that TTB would suffer manifest danger is not supported by sufficient evidence. Because we reverse the dependency finding we do address these issues at length. However, we note that because TTB has been returned to KB, the out-of-home placement issue is moot. *See Herrera v. Villaneda*, 3 Wn. App. 2d 483, 492, 416 P.3d 733 (2018) (an issue is moot if we cannot provide effective relief). We also note that we agree with KB and the Department that the finding that TTB would suffer manifest danger of serious abuse or neglect in KB's home is not supported by substantial evidence.

### CONCLUSION

We conclude that evidentiary error during the dependency hearing requires reversal. We further conclude that the out-of-home placement issue is moot because TTB is currently placed with KB. Accordingly, we reverse the order of dependency and remand for further proceedings.

10

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Veljacic, J.

We concur:

Maxa, J.

Glasgow, A.C.J.