

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Dependency of, | ) | |
| | ) | No. 37111-5-III |
| F. M., | ) | |
| | ) | |
| | ) | UNPUBLISHED OPINION |
| | ) | |

KORSMO, A.C.J. — IM appeals from an order terminating his parental relationship with his daughter, FM. We affirm.

FACTS

FM was born in late summer 2016, to AS and IM, an unmarried couple who did not live together at the time of trial. AS was also the mother of an older child involved in the dependency, CH, who was fathered by a different man.[1] IM, age 27 at the time of FM's birth, also was the father of an older child, KM.

All three children were found dependent after IM assaulted AS while he held FM in his arms. Prior to the assault, the Department of Social and Health Services (Department)[2] had been investigating the home due to concerns about the mother's ability

---

[1] IM is the only parent involved in this appeal and FM is the only child; none of the other parents appear to have sought review of the termination order.

[2] DSHS changed its name to Department of Children, Youth and Families on July 1, 2018. We use the term Department to cover both iterations of the agency's name.

to care for her children because of mental health issues. Case workers observed IM's cannabis smoke while visiting the home. They left the children in the house despite the health concerns the smoke posed for FM. That changed after the assault on October 18, 2016.

The assault incident resulted in the filing of a dependency petition that same day. After a hearing held between January 24 and 26, 2017, a dependency order was entered March 2, 2017 governing all three children and their four parents.[3] KM was remanded to the custody of her mother, but the court found that no parent was capable of caring for CH or FM due to the domestic violence and removed those two children from the household. IM admitted that he was "high" during the hearing; both he and AS told the court that he was a better parent when under the influence of cannabis. The court also found that IM had "a history of problems controlling his temper," and the relationship between IM and AS was "fraught with domestic violence."

The order directed IM to complete drug/alcohol, psychological, and domestic violence evaluations and follow all treatment requirements, as well as obtain negative UA/BA/follicle testing results. The parents were required to demonstrate the ability to meet the children's physical and psychological needs, maintain a safe and drug/alcohol free home environment, and maintain regular visitation with the children.

---

[3] KM and her mother later were dismissed from the dependency plan and the child returned to the mother's custody pursuant to a court approved parenting plan.

IM only partially complied with the directives. The psychological evaluation determined that IM experienced ADHD[4], mixed mood personality disorder, mixed personality disorder, and substance abuse disorder due to his cannabis use. The latter condition made caring for his children more difficult. The psychologist also opined that cannabis use had no medicinal value in relation to the mental health conditions. Medicines were prescribed to address his mental health problems, but he ignored the medications in favor of cannabis, believing that drug helps him function best.

The alcohol/drug evaluation required out-patient treatment for his cannabis dependency. In turn, the treatment programs required IM to forego use of cannabis. He declined to do so even though he attended and participated in many counselling sessions. All of his UA tests were positive for cannabis use and showed four times the level of the typical user. He told a counselor that he "dabs" the drug several times a day via an electronic vaporizer, a device for using cannabis in liquid oil form. He was kicked out of one program due to his refusal to stop using and voluntarily left the other after obtaining a cannabis authorization in 2018. IM admitted using cannabis since age 14 and variously told his counselor that he used cannabis to help him sleep, control his appetite, and for his ADHD. After obtaining the authorization, he asserted that he used the drug to deal with back pain from an injury suffered eight years earlier.

---

[4] Attention deficit hyperactivity disorder.

3

Under a criminal court order, IM started a one-year domestic violence treatment program, but was discharged in March 2018, due to being under the influence of controlled substances and for positive UA results. He was reenrolled in June 2018 after obtaining a district court order permitting him to attend while using medical cannabis. His renewed participation initially was noncompliant, but he became more involved over time. However, violence issues continued. He was investigated in February 2018, for assaulting AS, and was arrested in April 2018, for domestic violence involving his roommates. He also became involved in a dispute with law enforcement at a grocery store in July 2018.

A counsellor recommended family therapy and a parenting assessment. IM refused to take part in the assessment or engage in therapy. He did participate in a "Love and Logic" lecture, but the Department did not believe the lecture satisfied his assessment and therapy needs.

Around six months of age, FM began showing physical and psychological difficulties. The physical problems included decreased core and extremity strength, resulting in, among other challenges, the need for feeding therapy in Spokane. Both IM and AS were invited to the therapy appointments. The Department also offered to provide IM with gas cards and pay for fixing his car so that he could attend. He declined to attend the therapy.

No. 37111-5-III
*In re F.M.*

Ultimately, the Department moved to terminate the parent-child relationships for both FM and CH. The matter proceeded to trial in Pend Oreille County Superior Court between May and September 2019. IM represented himself initially, but gave way to standby counsel later in the proceedings. IM called four friends and relatives, all cannabis users themselves, to testify that he was a better parent when using cannabis. He also testified during trial that FM was his "birthright," "possession," or "property."

The court granted the termination petition for each child. With respect to FM, the court entered a finding concerning her needs that states in part:

> [FM] presents with a number of developmental issues requiring special parenting skills. [FM's] physical and cognitive deficits require a strict regime of therapy, which has been ably pursued by her foster family over the last two years with good results. If [FM's] caregiver is not attentive to her special needs and requirements for therapy, she will regress and be at risk of injury. Throughout the period of the dependency, the social worker has encouraged [FM's] parents to become involved in her care and learn her needs and how to address them, but they have never done so. They have never attended any of [FM's] medical or therapy appointments. They did not visit [FM] in the hospital when she broke her leg during the dependency. [IM], for his part, denies that [FM] has any special needs or that he is in need himself of learning how to care for her; this denial puts [FM's] progress and safety at risk.

Clerk's Papers (CP) at 174 (Finding of Fact I).

The court entered extensive findings concerning IM, with several of those findings recognizing the debilitating impact of cannabis consumption on his ability to address his many parenting deficiencies. Noting IM's testimony that FM constituted his "birth right," the court stated "this view is not child-centered, and that it stands at the heart of

5

this dependency case and the subsequent termination trial." CP at 178 (Finding of Fact III). The court noted that none of the parents had made substantial progress in addressing their respective deficiencies and all of them "demonstrated a general lack of compliance with court orders in spite of the efforts of the Department." CP at 182 (Finding of Fact VII).

The court terminated the parent-child relationships. IM timely appealed to this court. A panel considered his appeal without conducting argument.

ANALYSIS

IM raises two contentions in this appeal, arguing that his parental rights were wrongly terminated due to his medical cannabis consumption and that he did not receive notice that his child's special needs were an additional basis for terminating the relationship. We address those contentions in the order listed after first noting the general principles governing review of this case.

In order to terminate the parent-child relationship, the State first must establish the six elements of RCW 13.34.180(1).[5] These factors must be established by clear, cogent, and convincing evidence. RCW 13.34.190(1)(a)(i). The trial court then must likewise

---

[5] The State must present evidence establishing that (1) the child has been found to be dependent, (2) the court has entered a dispositional order, (3) the child has been removed from the custody of the parent for at least six months, (4) all the necessary services have been afforded to the parent to correct the parental deficiencies, (5) there is little likelihood of remedying the parental deficiencies, and (6) continuation of the parent-child relationship clearly diminishes the child's prospects of permanent placement. RCW 13.34.180(1).

find by that same standard that the parent is currently unfit. *In re Welfare of A.B.*, 168 Wn.2d 908, 918, 232 P.3d 1104 (2010). "'Clear, cogent, and convincing' means highly probable." *In re Welfare of M.R.H.*, 145 Wn. App. 10, 24, 188 P.3d 510 (2008). The trial court's findings are entitled to great deference on review and those findings will be upheld when supported by substantial evidence. *In re Dependency of K.S.C.*, 137 Wn.2d 918, 925, 976 P.2d 113 (1999).

This court reviews the factual findings for substantial evidence and whether the findings support the conclusions of law. *In re Welfare of X.T.*, 174 Wn. App. 733, 737, 300 P.3d 824 (2013). "Substantial evidence exists if, when viewing the evidence in the light most favorable to the prevailing party, a rational trier of fact could find the fact more likely than not to be true."[6] *Id.* This court does not weigh the evidence nor the credibility of any witness. *Id.* "Because the trial court has the opportunity to hear the testimony and observe the witnesses, its decision is entitled to deference." *In re Welfare of S.J.*, 162 Wn. App. 873, 881, 256 P.3d 470 (2011).

*Medical Cannabis*

IM argues that his parental rights to FM were terminated solely because of his legal, medical use of cannabis and that the trial court did not enter appropriate findings

---

[6] This standard also has been defined to mean that the evidence "is sufficient to persuade a rational, fair-minded person that the finding is true." *Cantu v. Dep't of Labor & Indus.*, 168 Wn. App. 14, 21, 277 P.3d 685 (2012).

related to that topic.  The factual record does not support his argument.  Although

cannabis use significantly impacted his life and his ability to address the requirements of

the dependency, it was not the basis for terminating the parent-child relationship.

At issue are the statutes relating to the use of intoxicating substances as they

concern the ability to parent.  The dependency statute addresses the topic in the context of

the parent's ability to timely remedy his deficiencies.  The statute permits the trial court

to consider whether:

> Use of intoxicating or controlled substances so as to render the parent
> incapable of providing proper care for the child for extended periods of
> time or for periods of time that present a risk of imminent harm to the child,
> and documented unwillingness of the parent to receive and complete
> treatment or documented multiple failed treatment attempts.

RCW 13.34.180(1)(e)(i).[7]

> The medical cannabis statutes provide that a qualifying patient
>
> may not have his or her parental rights or residential time with a child
> restricted <u>solely due</u> to his or her <u>medical use of cannabis</u> in compliance
> with the terms of this chapter absent written findings supported by evidence
> that such use has resulted in a long-term impairment that interferes with the
> performance of parenting functions.

RCW 69.51A.120 (underscore added).[8]

---

[7] This statute, enacted in 1993, appears to have codified common law tradition of treating drug addicted parents as unfit.  *See* LAWS OF 1993, ch. 412, § 2; *In re Welfare of Fisher*, 31 Wn. App. 550, 643 P.2d 887 (1982) (child born showing signs of drug withdrawal).

[8] Adopted by LAWS OF 2011, ch. 181, § 409.

This last statute is the heart of appellant's argument. He contends that his right to use medical cannabis trumps the programs ordered by the court to remedy his parenting deficiencies and treats the court's acknowledgement of the centrality of cannabis in his life as if it were *the* basis for taking his parental rights away—and doing so without appropriate findings. His argument overstates the trial court's ruling.

As the respondent notes, the RCW 69.51A.120 findings requirement only applies when medical cannabis use is the *sole* basis for terminating parental rights. That is not the situation here. The trial court initially identified drug and alcohol use, psychological conditions, and domestic violence as the three primary deficiencies preventing IM from successfully parenting his children. Indeed, medical cannabis could not have been identified as a problem when the dependency order was signed in 2017 since IM did not even obtain the authorization until 2018, more than a year into the dependency.[9]

Even if IM's decision to use medical cannabis constituted a legitimate basis to disregard the court's order to engage in drug treatment—a question we do not decide—it would not authorize IM to disregard his psychological and domestic violence treatment regimes. Cannabis use was contrary to the dictates of the domestic violence treatment

---

[9] In addition to using the *post hoc* authorization as an excuse to ignore treatment directives, FM's trial tactic was to make his use the center of *his* case. On appeal, he attempts to treat his drug usage as if it were an affirmative defense that the State needed to disprove. Although cannabis use was a central part of the defense case, it was not a part of the State's case, let alone the sole basis for terminating parental rights.

program. It also was recognized as a significant impediment to treatment of IM's

psychological conditions, but cannabis use did not preclude mental health treatment.

Instead, IM declined to use the medication prescribed for his psychological problems in

favor of his preferred treatment.

RCW 69.51A.120 is not at issue in this case. The court did not terminate IM's

parental rights because of his use of medical cannabis, let alone solely because of it. His

argument is without merit.[10]

*Due Process*

IM also argues that he was not given notice, in violation of his due process rights,

that his inability to care for FM's special needs was a parenting deficiency in need of

correction. Again, we believe he reads too much into Finding of Fact I. He could not

adequately care for the child prior to her special needs being identified. His inability to

meet her basic needs, not her then-unidentified special needs, was the basis for the

dependency action. The court never found that the inability to meet her special needs

was a parenting deficiency that he had failed to correct.

A parent has a due process right in dependency and termination proceedings. We

once summarized some of the basic features of due process in this context:

---

[10] IM properly assigns error to the trial court's findings concerning the RCW 13.34.180(1) factors, but challenges their sufficiency only in light of the perceived need to include findings under RCW 69.51A.120. Since we conclude his principle argument is without merit, we do not further consider his assignments of error to the findings.

> Due process is a flexible concept that may vary with the interests that are at stake, but at its heart are the concepts of notice and the ability to be heard. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313-314, 70 S. Ct. 652, 94 L. Ed. 865 (1950). Due process is violated if a parent is held accountable for a parenting deficiency about which she was never notified. *In re Dependency of A.M.M.*, 182 Wn. App. 776, 790, 332 P.3d 500 (2014).

*In re Parental Rights to F.M.O.*, 194 Wn. App. 226, 230, 374 P.3d 273 (2016). In the event that the trial court relies on a deficiency of which the parent was not given notice, the remedy is to strike the deficiency finding. *Id.* at 233. If the record reflects sufficient other bases to support the termination ruling, the case will be remanded for the trial court to determine whether termination is still justified without considering the stricken deficiency. *Id.*; *In re Dependency of A.M.M.*, 182 Wn. App. 776, 792-793, 332 P.3d 500 (2014).

IM contends he is in the same position—he was unaware his inability to meet FM's special needs was considered a parenting deficiency. This argument reads Finding of Fact I out of context. The finding is centered around FM and explains her circumstances, primarily her special developmental challenges and the need to address them. The ensuing findings address her mother AS, her father IM, and the father of CH, as well as the dependency finding. CP at 174-181 (Findings of Fact II-V). The remaining findings then address the required factors of RCW 13.34.180(1) with respect to each parent.

11

Finding of Fact VI addresses the services each parent needed to engage in. For IM, the list included only those services previously identified: chemical dependency, domestic violence, psychological evaluation and mental health counseling, and a parenting assessment. The finding also noted the efforts made to get IM to participate. Finding of Fact VII addressed the timeliness of remediation efforts in order to return the children to their parents. The court noted that all parents had "demonstrated a general lack of compliance with court orders."

Finding VIII states that the parents had notice of their deficiencies and the consequences of failure to remedy them. Finding IX determined that the parents currently were unfit to parent the children. With respect to IM, the court expressly found that he was capable of learning and addressing his deficiencies, but he chose not to do so. Instead, he favored cannabis consumption over the needs of his child.

Viewed as a whole, the findings reveal that the parents' inattention to FM's special needs was not a parenting deficiency. It is not included among the listed deficiencies of the parents, nor is there any indication that the parents were directed to acquire those skills. Similarly, no finding states that the parents lacked the skills necessary to meet the child's special needs. Instead, Finding I details the child's needs and notes her parents' lack of engagement in her care. They declined to visit her in the hospital and they declined to join her therapy sessions. IM simply denied that the child needed special services and asserted that he was capable of caring for her.

No. 37111-5-III
*In re F.M.*

Finding I is about FM and her situation. It is not a determination that her parents were deficient because they lacked the special skills necessary to care for FM. Instead, the finding reflects that they parents made no effort to learn about the child's needs or assist in providing care for the child.

The trial court did not find IM deficient due to any lack of necessary skills to care for his daughter.

The judgment is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, A.C.J.

13

No. 37111-5

SIDDOWAY, J. (concurring in result) — I agree that the order terminating IM's

parental relationship with his daughter FM should be affirmed, although not for the same

reason given by the author of the lead opinion.

RCW 69.51A.120 provides some guidance on what the legislature meant by a

restriction of parental rights or residential time "solely due" to a parent's legally-

compliant medical use of cannabis. That is because the statute tells us when a restriction

"solely due" to such use is permitted. It is permitted if a trial court enters "written

findings supported by evidence that such use has resulted in a long-term impairment that

interferes with the performance of parenting functions as defined under RCW

26.09.004."[1] A restriction based on such a long-term impairment is therefore a restriction

"solely due" to a parent's legally compliant medical use of cannabis. This is not a strict

or narrow meaning of "solely due."

I read the trial court's findings, conclusions and order terminating IM's parental

rights as based on such a long-term impairment, and therefore as "solely due" to his

medically-compliant use of cannabis within the meaning of the statute. The court's

written findings speak at length about IM's "heavy cannabis use" and "severe cannabis

use disorder" and how it "significantly affected his ability to engage and progress in

services" and "was a major impediment to participating in and benefiting from court-

---

[1] RCW 26.09.004 defines "'parenting functions'" as "those aspects of the parent-child relationship in which the parent makes decisions and performs functions necessary for the care and growth of the child," followed by a nonexclusive list of examples.

ordered remedial services." Clerk's Papers (CP) at 155, 161. The trial court found that

"[e]ssentially, [IM] has chosen his right to use cannabis over his daughter's need for him

to comply with and benefit from abstinence-based court-ordered services, and this choice

demonstrates his unfitness to care for her." CP at 161-62. In the trial court's oral

findings, which it incorporated in its written findings, it spoke of the testimony of

psychologist Scott Mabee, who the court observed "very importantly, in my judgment"

testified that IM's substantial cannabis use complicated IM's deficient emotional

psychological features. Report of Proceedings (RP) at 561. The court recapped

testimony of Elizabeth Reif, who described IM's participation in a domestic violence

program, that IM's marijuana use is "a hindrance for changing patterns and behaviors."

RP at 569. Speaking of the testimony of Judy Warren, the social worker assigned to

FM's case by the Department of Children, Youth and Families, the trial court recalled her

testifying that IM's combination of deficits made one another worse; it paraphrased her

as testifying that "so long as there's . . . a continuing higher amount of marijuana, nothing

is gonna work." RP at 576. The trial court's findings are supported by the evidence.

The termination decision is supported by the type of findings that authorize trial

courts to restrict parental rights under RCW 69.51A.120. A trial court is not required to

parrot the language of the statute (particularly when the statute was never mentioned in

the trial court, which was the case here). It is enough that in substance a trial court finds,

supported by evidence, that a parent's cannabis use has resulted in a long-term

No. 37111-5-III
*In re Dependency of F.R.M.*

impairment that interferes with his or her performance of parenting functions as defined

under RCW 26.09.004. In substance, that is what the trial court found. For that reason, I

agree that the trial court's order should be affirmed.

                                                _____

                                                Siddoway, J.

No. 37111-5-III

FEARING, J. (dissent) — In this opinion, all names, except those of state employees, professionals, and service providers are fictitious to protect the privacy of children.

RCW 69.51A.120 declares:

> A qualifying patient or designated provider may not have his or her parental rights or residential time with a child restricted *solely due* to his or her medical use of cannabis in compliance with the terms of this chapter *absent written findings* supported by evidence that such use has resulted in a long-term impairment that interferes with the performance of parenting functions as defined under RCW 26.09.004.

(Emphasis added.) Based on RCW 69.51A.120, I dissent from the majority's affirmation of the trial court's termination of the parental rights of Irvin Michaels to his daughter, Farah. Although the State contends that the trial court did not base termination solely on marijuana use, the position taken by the State during the trial, the oral ruling by the trial court, and the findings of fact of the trial court show that all factors leading to the termination originated and ended with Michaels' marijuana use. In turn, the trial court failed to enter the written findings demanded by RCW 69.51A.120.

Irvin Michaels, age thirty during the termination trial, has two daughters: Karen and Farah, respectively ages ten and two at the time of the trial. Michaels raised Karen

for seven years by himself.  Anna Smathers, also party to the termination proceedings, is the mother of Farah.  Smathers is not the mother of Karen.  This appeal concerns only Farah.

Father Irvin Michaels has an attention deficit hyperactivity disorder (ADHD) and an attended learning disability.  He reads at the fourth grade level.

As part of the dependency process, Dr. Sandra Dexter, at the request of the State, conducted a psychiatric medication assessment.  Dr. Dexter confirmed the diagnosis of ADHD and first prescribed Adderall and later Methylphenidate, an amphetamine, for the ADHD.  Michaels had a reaction to the Adderall.  Michaels ceased taking Methylphenidate because the amphetamine caused his head to race.

In January 2018, Irvin Michaels obtained a medical authorization for use of marijuana, although he began use of marijuana at age 14.  The medical authorization does not limit Michaels' daily input of cannabis.  Michaels testified he uses about 0.2 grams per day of marijuana.  He ingests the cannabis through dabs, oil pressed from the marijuana leaves.  Dabs eliminate the need for smoking and allow quicker pain relief.  Irvin Michaels and other witnesses often referred to the paper allowing use of medicinal marijuana as a prescription.  The trial court correctly noted that the paper is titled an authorization, not a prescription, although the law does not deem an authorization any less valid for our purposes than a prescription.  RCW 69.51A.010; RCW 69.51A.120.

2

Irvin Michaels testified that he uses marijuana for intractable pain caused by a bulging disc. The State throughout the proceedings attacked the credibility of Irvin Michaels' marijuana use by noting that some of the evidence suggested that Michaels used the cannabis for his ADHD. Nevertheless, the authorization references the intractable pain. Although the State insisted on Michaels' cessation of marijuana use and challenged the necessity of marijuana, the State presented no medical evidence denying the validity of Irvin Michaels' need for cannabis or of the legitimacy of the medical authorization.

Irvin Michaels denies that he abuses marijuana. He uses the medication only as needed. He denies that the cannabis negatively impacts his ability to care for children. If anything, according to Michaels, the marijuana assists because it reduces the pain and permits him to focus.

The trial court entered a dependency order in October 2016. The order directed Irvin Michaels to undergo a chemical dependency assessment, a psychological evaluation, and a domestic violence assessment. Department of Children, Youth and Families (DCYF) social worker Judy Warren made referrals for the services ordered.

In February 2017, pursuant to the dependency order, clinical psychologist Scott Mabee performed an evaluation of Irvin Michaels at the request of the State. Mabee confirmed that Michaels has a low intelligence quotient. Michaels' ability to understand his world by observation exceeds his ability to understand his surroundings by reading.

3

According to Dr. Mabee, Michaels tends to act before contemplating his actions. Mabee noted that Michaels also encounters anxiety, suspiciousness, and depression.

Scott Mabee concluded that Irvin Michaels has a substance abuse disorder. He believes that cannabis impedes his ability to attend to a child. Dr. Mabee recommended individual counseling to assist Michaels in being assertive, not reactive. Mabee also recommended family therapy.

Scott Mabee wished for Irvin Michaels to abstain from marijuana. He testified that cannabis remedies chronic pain, not anxiety or depression. Mabee did not mention whether he knew that Michaels suffers from chronic pain.

Because of Irvin Michaels' limited intelligence, Scott Mabee questioned Michaels' ability to help teach a child and assist in homework. During the first days of the termination trial, Irvin Michaels represented himself. When cross-examining Dr. Mabee, Michaels presented the worthy theme that learning disabled parents should be given the opportunity and possess the right to raise children even if the children repeat the parents' disability. Justice Oliver Wendell Holmes erred when penning his infamous aphorism - three generations of imbeciles are enough - in *Buck v. Bell*, 274 U.S. 200, 207, 47 S. Ct. 584, 71 L. Ed 1000 (1927).

The dependency order required a parenting assessment and parenting classes based on the assessment. Irvin Michaels refused to undergo the assessment or attend classes approved by the State. He instead participated in and completed a Love and Logic

4

course, after which he procured a parenting certificate. The course helps to teach parents the needs of children at different ages. Michaels insists that his completion of this course fulfilled, if not exceeded, the dependency order demand. The State disagreed.

Pursuant to the dependency order, Irvin Michaels, in the summer of 2017, completed a chemical dependency evaluation at Pend Oreille County Counseling (Pend Oreille). According to Sabrina Newton, counselor at Pend Oreille, Michaels engaged in chemical dependency counseling with her beginning in August 2017 and ending in 2018. He attended fifteen group counseling sessions and missed six group counseling sessions. He participated in thirteen individual counseling sessions and missed six individual counseling sessions. His missing of some sessions did not pose an obstacle to his completion of counseling. Urinalyses taken by Pend Oreille consistently noted the presence of THC.

According to Sabrina Newton, Pend Oreille only offers an abstinence based chemical dependency treatment program. The entity does not tolerate any substance use, including use of medical marijuana. Although Irvin Michaels could have continued to attend counseling sessions, Pend Oreille would not graduate Michaels from the program as long as he continued cannabis use.

On January 25, 2018, Irvin Michaels brought a medical marijuana prescription to Sabrina Newton. Newton informed Michaels that he could continue to attend sessions, but that Newton would not certify that he completed the program if he continued to use

marijuana. Newton gave Michaels the option to end treatment. Because of the refusal to graduate him from treatment, Michaels ceased attending sessions.

According to Sabrina Newton, Irvin Michaels was never noticeably high during chemical dependency counseling sessions. Michaels was pleasant and participated in group sessions.

Pursuant to Scott Mabee's recommendation, Pamela Kellogg, also of Pend Oreille, provided individual mental health counseling for Irvin Michaels beginning in August 2017. He attended all sessions as his transportation allowed until July 2018. Kellogg frequently had to cancel appointments for emergencies resulting from her serving as a crisis responder. In her testimony, Kellogg noted the nice personality of Michaels and his love for his children. Michaels was willing to learn. Kellogg never deemed Michaels "high" on marijuana during the sessions. Nor did he ever smell of marijuana. She did not believe that Michaels overused marijuana.

An assault by Irvin Michaels on Anna Smathers, in October 2016, prompted the State to file the dependency petition for the care of Farah. The dependency order directed Michaels to undergo domestic violence treatment. He enrolled in a program called Social Treatment Opportunity Programs (STOP), which requires one year to complete. The treatment entailed group sessions, review of workbooks, and letter writing.

Irvin Michaels began STOP sessions in August 2017. He first advanced little in treatment because of his refusal to complete homework and his denial of any

6

wrongdoing. On March 26, 2018, STOP discharged Michaels from treatment because of a urinalysis that resulted in positive findings for marijuana and Tramadol. The treatment program does not tolerate any drugs. On March 17, Michaels slurred his words and uttered nonsensical comments.

Irvin Michaels returned to the STOP program in June 2018, when he started domestic violence treatment anew. In the meantime, Michaels had obtained a court order from the Pend Oreille County District Court recognizing the validity of the medical marijuana authorization. With the authorization, STOP permitted marijuana use despite its no tolerance policy.

Elizabeth Rief served as director of Irvin Michaels' STOP treatment on his return to the program. According to Rief, Michaels had not been under the influence of marijuana since his return. He had not smelled of marijuana or had red eyes. At first, Michaels' attendance was spotty, but, beginning in November 2018, Michaels regularly attended the sessions.

As part of the STOP domestic violence treatment program, the participant must prepare an "empathy letter," written from the viewpoint of a victim of domestic violence. The members of the treatment group review the letter and decide whether the letter passes. In February 2018, when the group commented on Michaels' letter, Michaels grew argumentative, and he left the session. Nevertheless, during the next session, he apologized for his earlier response. According to Elizabeth Rief, in the intervening days,

a light had figuratively turned on in Michaels' brain, Michaels took responsibility for his violence, and he thereafter grew in his behavior and understanding. According to Rief, Michaels sometimes needed time to process feedback because of his learning disability. Nevertheless, in the long run, his low intelligence had not prevented Michaels from successfully participating in STOP.

At the time of trial, Elizabeth Rief expected Irvin Michaels to finish his STOP treatment within a month. A participant in STOP must prepare a "responsibility letter," written from the viewpoint of the domestic violence perpetrator to his or her victim. At trial, Michaels was currently working on his responsibility letter.

According to Irvin Michaels, STOP gave him the tools he needed to preempt anger and violent reactions. At the time of trial, he only needed one more week to finish his domestic violence treatment.

Barbara Mary Norby Hethail, on behalf of the State, supervised visits between Irvin Michaels and Farah. Michaels visited Farah twice a week for two hours at a time. Michaels regularly attends his visits. The visits occur at the DCYF office or in a park during clement weather. Because Michaels has always acted appropriately, Hethail has never ended a visit early. Michaels never endangered the safety of Farah. According to the State, Farah has special eating needs, but Hethail was never notified of any such needs. According to Hethail, Michaels brings appropriate food, books, and toys for the

visits. Michaels plays and reads to Farah. When at the park, Michaels plays ball with Farah and attends to her on the slide and the swing.

Barbara Hethail has never deemed Irvin Michaels under the influence of a substance during a visit with Farah. She never smelled marijuana on Michaels, nor did he have red eyes.

According to Irvin Michaels, he and Farah maintain a close bond and enjoy happiness when together. After Barbara Hethail testified to a close bond between Michaels and Farah, the trial court struck the testimony based on an objection by the State that Hethail, despite being a visitation supervisor, lacked qualifications to render the opinion.

According to social worker Judy Warren, the State will not allow Farah to return to her father until he is sober. During her trial testimony, Warren insisted that Irvin Michaels cannot parent because of his use of marijuana. Despite the medical authorization, Warren believed that Michaels uses marijuana simply because he likes the substance, not because of medical needs. Warren concluded that Michaels refused to engage in chemical dependency treatment because he refused to cease cannabis use and thereby ignored the testimony of the treatment provider that Michaels opted to quit because the provider would not allow Michaels to graduate despite the medical authorization.

DCYF social worker Peter Waterman insisted that Irvin Michaels cease all use of marijuana. Waterman allowed Michaels no deference for marijuana use despite his medical authorization, because one can obtain prescriptions for harmful substances. During closing argument, the State's counsel insisted that Irvin Michaels must abstain from all marijuana use if he wishes to parent a child.

At trial and in this appeal, the State emphasizes that Irvin Michaels' constitutional views interfere in his recognition of the State's and the court's authority to intervene in his raising of children. Michaels testified that Farah is his birthright and he does not recognize the court as holding authority to require him to perform services to prevent termination of his parental rights. No law promotes terminating parental rights because of such a constitutional viewpoint. Many parents share this reading of the constitution.

During the trial court's oral ruling, the court commented:

> The parents are currently unfit to parent the child—children. And, again, that unfitness stems from the fact that services understandably offered at the outset have not been engaged in successfully, there has been no successful completion of any service, and notably, the emotional/psychological/cognitive deficits that were identified early on, which require consistent cognitive behavioral therapy, consistent engagement, consistent engagement without psychoactive substances being present, have not—it's not happened. The parents have chosen not to do that. Ms. [Smathers], by choosing not to participate, *Mr. [Michaels] by choosing to not stop marijuana. What it does have some good effects on him, but it's not positive for parenting.*

Report of Proceedings (RP) at 585 (emphasis added). The court added:

10

And, as much as it pains me to say it, Mr. [Michaels] chose a desire and perhaps in his mind a need to smoke marijuana over the needs of his daughter for a present and nurturing parent.

RP at 586.

In its findings of fact, the trial court wrote, in part:

Mr. [Michaels'] cannabis use also significantly affected his ability to engage and progress in services: all of Mr. [Michaels'] services were abstinence-based and, due to his continuing use throughout the dependency, Mr. [Michaels] was unable to complete these court-ordered services. One such example is chemical dependency treatment. Mr. [Michaels] participated in a chemical dependency assessment and was diagnosed as exhibiting a severe cannabis use disorder, requiring outpatient treatment. His treatment counselor told him at the outset of treatment in September 2017 that he needed to abstain from use of cannabis in order to complete treatment successfully, but Mr. [Michaels] did not stop using. In February 2018, Mr. [Michaels] self-terminated treatment because of his ongoing cannabis use.

. . . .

In June 2018 he re-enrolled in the program, this time in possession of an order or other document from the District Court which, inexplicably to this court, authorized Mr. [Michaels] to be able to participate in the program even while he was using cannabis. This court notes, parenthetically, that this direction regarding Mr. [Michaels'] use was issued by the District Court and not the Superior Court. Both the social worker and the Superior Court judge made it clear to Mr. [Michaels] that he was expected to follow the Superior Court's order and abstain from the use of cannabis, which direction Mr. [Michaels] has refused to follow throughout the dependency. At the time of trial, Mr. [Michaels], while still enrolled in domestic violence treatment, had not progressed sufficiently to be successfully discharged from the program.

Clerk's Papers (CP) at 177-78. Finally, the court declared:

He [Irvin Michaels] also chose to continue his heavy cannabis use even though he knew that his use was a major impediment to participating in and benefiting from court-ordered remedial services. Essentially, Mr.

11

> [Michaels] has chosen his right to use cannabis over his daughter's need for him to comply with and benefit from abstinence-based court-ordered services, and this choice demonstrates his unfitness to care for her.

CP at 183-84.

I recognize that sufficient evidence might have justified granting the State's petition for termination of parental rights without reliance at all or in part on marijuana use. For example, Irvin Michaels refused to undergo a parenting assessment and instead insisted this his completion of a Love and Logic course sufficed for parental training. He failed to participate in family therapy. Michaels denied that Farah possessed special needs. But the trial court focused extensively on the marijuana use and never found that other factors alone warranted termination of parental rights or analyzed why other factors would alone justify termination. Instead the trial court commented that Irvin Michaels chose not to participate in services because he chose marijuana instead. In its written findings, the court found that all services were abstinence based such that Michaels could not complete services. Indeed undisputed evidence established that service providers refused completion of services because of marijuana use.

Assuming the State claims that Michaels ingested excessive amounts of THC, the State never told Michaels what level of THC was acceptable. The State never worked with Michaels to lower the amount of marijuana consumed. Instead, throughout the dependency proceeding, the State insisted on complete cessation of marijuana use contrary to Irvin Michaels' rights under RCW 69.51A.120. In turn, the trial court

12

criticized the district court judge for recognizing the validity of the medical authorization

for the use of marijuana.

None of the service providers testified that use of marijuana interfered in Irvin

Michaels' ability to complete the services, other than the provider's policy refusing to

graduate the participant unless he ceases all use. After March 2018, Irvin Michaels never

appeared stoned when attending counseling or other services. During the entire

dependency, Michaels was never under the influence when visiting Farah.

Irvin Michaels' assault on Anna Smathers precipitated the State's filing of the

dependency petition, and the dependency court ordered Michaels to engage in domestic

violence treatment. The trial court found that Michaels never completed domestic

violence treatment, but the finding fails to recognize the undisputed evidence, including

the testimony of the domestic violence counselor, that Michaels would complete the

treatment within one month of the trial. The extent of the State's notification to Michaels

of special needs of Farah is hazy, and the majority opinion denies that special needs were

a factor in the trial court's decision.

Copious facts and numerous factors, some major, some minor, and some even

miniscule, influence all judges' decisions, including a decision to terminate a father's

constitutional right to the care, custody, and companionship of his daughter. If a

reviewing court literally or meticulously read RCW 69.51A.120's phrase "solely due to

his or her medical use of cannabis in compliance with the terms of this chapter," the

13

statute might never apply because the State could always point to some isolated fact or a minor factor impacting the trial court's decision. When marijuana use consumes the State's presentation to the court and when cannabis use impacts all factors noted by the court for its decision, medical use of cannabis should be deemed the "sole" reason for the termination.

The lead author writes, in a footnote, that Irvin Michaels staged marijuana use as an affirmative defense that he argues the State needed to disprove. In so writing, the lead author compliments Michaels with an intelligence that the record shows he lacks. The author also ignores the unending criticism of the State of Michaels for his cannabis habit and the introduction of extensive evidence presented by the State to convince the trial court to terminate parental rights because Michaels chose marijuana over his daughter.

I RESPECTFULLY DISSENT:

_____
Fearing, J.